The opinion of the court was delivered by
Watkins, J.
The defendant, Robert Duncan, Jr., appeals from a verdict of guilty which was rendered against him on the charges of burglary and larceny, and a sentence to eight years’ imprisonment at hard labor on the first charge, and two years on the second charge.
The indictment preferred said charges, in two counts, against the several defendants, Marcus Duncan, Robert Duncan, Jr., Lucius. *1026 Payne and Walter Payne. On account of serious illness, Marcus Duncan could not be brought to trial. Lucius Payne and Walter Payne confessed, and “turned State’s witnesses,” the State producing no other witnesses on the trial, and the conviction of Robert Duncan, Jr., resulted.
Whilst there are several bills of exceptions to which attention has been attracted, there is but one which, in our view, requires discussion, and that relates to declination of the trial judge in granting a new trial.
Amongst others, the following grounds are assigned for a new trial, viz.:
1. That of the six jury commissioners, only three participated in drawing the venire, and one of them was violently prejudiced against this defendant, and his prejudice resulted greatly to his injury and to the violation of his legal rights.
2. That two of the petit jurors who formed a part of the panel who tried and convicted this defendant, constituted a part of the voluntary posse who searched for, and assisted in procuring the arrest of some of the accused defendants.
The motion and accompanying affidavit declare that the prejudice of the jury commissioners was only developed and took shape after the jury were empaneled, and the participation of the two jurors named in the proceedings of the posse only became known to the defendant after the trial and his conviction.
They further declare, that, prior to the trial, the two jurors named were put upon their voir dire and interrogated with regard to their qualifications; and that, in the course of their interrogation, they affirmed that they had no feeling for or against the defendant, and had neither formed nor expressed an opinion relative to his guilt or innocence.
On the trial of the motion the following facts, substantially, were developed, viz.:
That no summonses were issued by the clerk of court for the procurement of the attendance of the jury commissioners, but that officer made only a verbal request of the sheriff to let them know that their services were wanted. He did not even make that request of the sheriff personally, but sent a message to that effect by a son of one of the jury commissioners.
That this message was received by the sheriff; but he — to use his *1027 own language — “ failed to get a summons to either Mr. Brown or Mr. Burch.”
That, although denying any prejudice against this defendant, the jury commissioner, Yernado, admitted that he did take steps to render the District Attorney assistance in his prosecution, and made an effort, in connection with others, to employ an attorney to assist in his prosecution, but that these negotiations failed, because the lawyer whom they sought to employ demanded a fee larger than they felt willing to pay.
He admitted that he had “ assisted in procuring testimony for the State,” against this defendant; that he had, at different times, participated in public meetings that were held for the purpose of devising ways and means of employing counsel to aid the District Attorney in the prosecution of the indicted defendants, and that he had consulted with his neighbors for that purpose.
This jury commissioner, as a witness on the trial of the motion, said:
“ The object of the meeting was to devise means to hold the testimony here against the Duncans. I am not prejudiced against the Duncans. They have never injured me. I am prejudiced against crime.”
Then the following occurred, viz.:
Q,. Did you or any of your party send for Judge Reed ?
A. Well; as I understood the Payne boys had plead guilty, and there was a move on foot by Duncan’s friends to defer the trial of Duncan until the Payne boys would be sentenced, and deprive us of their evidence, and that was what we sent for Judge Reed for, to ask him to hold the Paynes until the Duncan trial could be gotten up. The District Attorney asked me about one of the jurors, who was related to the accused (defendants), and I recommended him as being an honest man; and I also told him of one or two that, in my opinion, would not be good for him to take,” etc.
The testimony further developed the fact that one of the jurors, who is named in the motion, was not in the particular posse who assisted this defendant. This juror, as a witness, said:
“I was in a posse that arrested Thomas Magee. I do not know whether he was an accomplice or not. The grand jury found no bill against him. I was not in the chase after Robert and Marcus Duncan and the Paynes. I am told that they were captured by a part of *1028 the posse I started with. I was not here when they came back. When I started out I did not know who we were after. We were after the robbers.”
A similar statement is made by the other juror who is mentioned in' the motion.
These jurors admitted that they were sworn upon their voir dire, and testified that they had no bias nor prejudice against this defendant, and that they had neither formed nor expressed any opinion relative to his guilt or innocence.
On this state of facts we are called upon by the State to affirm that the accused has had a fair and impartial trial, but we feel bound to decide that proposition in the negative. A jury thus composed can not be such a fair and impartial one as the law contemplates, and we can not altogether rid our minds of the impression that one of the jury commissioners was not sufficiently disinterested to exonerate him from the imputation of fault: in the premises.
To say that a conviction, resting solely upon the testimony of two accomplices, by a jury in part composed of persons who participated with a voluntary posse in chasing after and running down the defendants, and which was drawn from a venire selected by three jury commissioners, one of whom had, before and after the trial, taken a most active and conspicuous part in procuring this defendant’s arrest and prosecution, is legal, passes comprehension as well as credence.
There can be no doubt of the fact that all of these circumstances conspired together to do this defendant great and serious injury. These things were unknown to the defendant at the time of the trial, and could not, in the nature of things, have been anticipated by him in sufficient time to have guarded himself agaist the resulting injury. The answer of the jurors, when interrogated on their voir dire, threw his counsel off his guard. The discovery was not made until after the trial.
In quite a recent case we had occasion to speak of similar proceedings in a criminal ease in which “ one of the jurors empanelled on the trial was one of the posse that searched for the accused” (State vs. Defee, 47 An. 193), in which we said, viz.:
“A trial of a prisoner by the sheriff and the posse arresting him would certainly strike the mind, to say the least, as not consistent with the impartial jury guaranteed the accused in criminal prosecu *1029 tions.. The empanelling of one of the posse on the petit jury, was, to that extent, an abridgement of the prisoner’s right to a fair trial. True, we have the rather scant expression of the juror on his voir dire (that) he thought he could try the case on the law and the evidence. (But) we think his relation to the subject disqualified him from, making the attempt,” etc. * * * “Those who take an active part in bringing the prisoner to justice should not have imposed upon them the other function of trying the accused in whose apprehension they have exhibited a zeal inevitably calculated to incapacitate them from giving him a fair trial.” For a stronger reason is that true in this case. The verdict and sentence must be reversed and a new trial granted.
It is, therefore, ordered and decreed that the verdict and sentence be set aside, a new trial granted, and the case remanded for. further proceedings according to law.